471 A.2d 541

**In re ADOPTION OF Charles OSTROWSKI, a Minor.**

**Appeal of Charles J. OSTROWSKI, Natural Father.**

Superior Court of Pennsylvania.

Argued May 12, 1983.

Filed Feb. 3, 1984.

Petition for Allowance of Appeal Denied May 31, 1984.

Ernest J. Gazda, Jr., Scranton, for appellant.

Janet A. Conser, Wilkes-Barre, for appellee.

John P. Pesota, Scranton, for participating party.

Before WICKERSHAM, WATKINS and MONTGOM-ERY, JJ.

WICKERSHAM, Judge:

Appellant Charles J. Ostrowski has taken this appeal from the order of the lower court dated October 4, 1982,

supplemented by an opinion and order dated January 6, 1983, terminating the parental rights of appellant to his son, Charles, Jr.

On May 19, 1982, appellant's former wife, Carol Haynes, who is the child's natural mother and appellee herein, filed a petition for involuntary termination of appellant's parental rights. Appellee relied upon 23 Pa.C.S.A. § 2511(a)(1) to establish the grounds for the termination. That section provides:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. 2511(a)(1).[1] A hearing was held on August 5, 1982. The lower court found that appellant had evidenced a settled purpose of relinquishing his parental claims for a period in excess of six (6) months, and by conduct continuing for a period of at least six (6) months, had failed to perform his parental duties. Therefore, the lower court ordered the termination of appellant's parental rights. This timely appeal followed.

Appellant states the sole issue on appeal as follows: Whether the Record, by clear and convincing evidence, warrants a finding under Section 2511(a)(1) of the Adoption Act that Appellant has evidenced a settled purpose to relinquish his parental rights or that Appellant has refused or failed to perform his parental duties in excess of six months.

Brief for Appellant at 3.

First, we note that our supreme court has recently held that in all proceedings to involuntarily terminate parental rights, the petitioner must prove the statutory criteria for the termination by at least clear and convincing evidence.

---

1. Act of Oct. 15, 1980, P.L. 934, No. 163, § 1, effective Jan. 1, 1981.

*In re T.R.,* 502 Pa. 165, 465 A.2d 642 (1983). In the instant case, the lower court applied the required "clear and convincing" standard. Lower ct. op. at 9, 11.

 We also recognize that our scope of review in termination of parental rights cases is narrow. *In re Adoption of J.S.M., Jr.,* 492 Pa. 313, 424 A.2d 878 (1981). Our review is limited to determining whether the termination is supported by competent evidence and whether the lower court abused its discretion or committed an error of law in granting the termination.[2] *Id.* We hold that the record in the instant case does not support a finding that the appellant has evidenced a settled purpose of relinquishing his parental claim or that he has failed to perform parental duties. Therefore, we reverse the decision of the lower court.

In *Adoption of Baby Girl Fleming,* 471 Pa. 73, 369 A.2d 1200 (1977), the Pennsylvania Supreme Court discussed the predecessor to 23 Pa.C.S.A. § 2511.[3] The supreme court stated that the section

> has been interpreted as requiring a deliberate decision on the part of the parent to terminate the parental relationship and that parent must persist in that determination throughout the six-month period.... The term "settled purpose" implies a finality of purpose.... In our efforts to determine if such a purpose was present, this Court has required an "affirmative indication of a positive intent" to sever the parental relationship before we have upheld an involuntary termination.

* * * * * *

**2.** We recognize that the issue of the proper scope of review applied in involuntary termination of parental right cases is presently before our *en banc* Court in the case of In Re James, J. 2793 PHL 1983, argued 2–11–83; however, the exercise of a different scope of review in this case would not affect the result.

**3.** 1 P.S. § 311(1). Adoption Act, Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311(1). Section 311(a) is identical to 23 Pa.C.S.A. § 2511(a)(1).

Thus, this Court has held that evidence of parental inaction and lack of interest for six months does not conclusively establish a settled purpose.

*Id.*, 471 Pa. at 76, 369 A.2d at 1202 (citations and quotations omitted).

In the instant case, the record does not establish an "affirmative indication of a positive intent" to sever the parental relationship. The father lived over 800 miles from the child. He visited with his son whenever he was in the Scranton area. He sent gifts and cards on birthdays and holidays. As noted in the brief prepared by appointed counsel for the minor child:

He continued to send the gifts despite his suspicion that the child was not being told who was sending them. He also continued to send money to the Appellee for his child despite her habit of accepting the money and then indicating that she considered it as payment of a prior debt owed to her and not as support for the child. Appellant continued to send these checks to the Appellee until she returned a check to him indicating her intention to refuse future support. Appellee informed him that she and her new husband did not need his money to support the child. (R. 27a, 58a)

The Appellant maintained Blue Cross/Blue Shield coverage for the child at his own expense and also established a savings account for his son. Such conduct supports a finding that he did not evidence a settled purpose for relinquishing parental claim to his child.

Brief for Minor Child at 4–5.

The lower court seemed to base its decision on two major grounds: the infrequency of contacts between appellant and his son and the appellant's failure to provide financial support.

The court noted that there were two occasions during which appellant had no physical contact with his son for a period in excess of six (6) months. Lwr. ct. op. at 5. Even where it is established that a parent has failed to perform

parental duties for a period in excess of six (6) months "such a finding does not, in and of itself, support an order terminating parental rights." *In re Involuntary Termination of Parental Rights of Geraldine Mae Santelia to Anthony Dino Pellegrino,* 318 Pa.Super. 413, 465 A.2d 21 (1983). Rather, the

> Court then must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of said parent's parental rights and the adoption.... In deciding this sensitive question, this Court is mindful of the irreversible nature and serious emotional impact which necessarily follow an involuntary termination of parental rights.

*In re Adoption of Orwick,* 464 Pa. 549, 555, 347 A.2d 677, 680 (1975) (citations omitted).

The individual circumstances of this case together with the explanations provided by appellant indicate that an involuntary termination of appellant's rights was not warranted. Appellant lived in Georgia, over 800 miles from his son. His employment did not permit him to return to Pennsylvania very often. When he did return to the Scranton area, however, he visited his son. When appellant visited the child, appellee would not permit appellant to remove him from her home. Appellant's visits were conducted in the living room of appellee's home in the presence of appellee and her new husband or mother-in-law. Appellant testified that this restricted him a great deal and limited his ability to get close to his son. N.T. at 82. Appellant also testified that although he wanted to change these circumstances, he "played by her rules" because he recognized that the child was well taken care of and he didn't want to cause any trouble. N.T. at 83. Appellant did not write letters to his son because of the boy's inability to read. N.T. at 99–100. Appellant did, however, send birthday presents despite his suspicion that his son was not being told who was sending them. N.T. at 100. Appellee

testified that the boy does not know that appellant is his father. N.T. at 36. We feel that appellant's explanations for failing to have more contact with his son, the circumstances of this case, and the restrictions placed upon the appellant by the appellee explain appellant's relationship with his son. Appellant has not affirmatively indicated a positive intent to sever the parental relationship.

The lower court also indicated that by failing to provide financial support appellant has not performed his parental duties. In this regard, we agree with the statements made by the attorney appointed to represent the minor child:

In regard to support of the child during the period in question, it should be noted that Appellee consistently refused to accept support for the child. She admitted to accepting two (2) checks designated as support but informed the Appellant that she personally was accepting this money as payment of a prior debt and did not use the money for the child's benefit. She finally returned a ripped up check to the Appellant and informed him of her intentions to refuse any future money he sent for support of the child. Certainly the Appellee cannot now argue that Appellant's failure to continue these futile payments is evidence of his refusal or failure to perform his parental duties. These facts do not support the Lower Court's finding that the Appellant has failed to perform his parental duties in a period in excess of six (6) months.

Brief for Minor Child at 6.

In the instant case, the record does not support a finding that appellant has evidenced a settled purpose of relinquishing his parental claim or that he has failed to perform parental duties. The lower court abused its discretion in terminating appellant's parental rights.

The order of the lower court is reversed and the case is remanded with instructions that the lower court enter an order in accordance with this opinion. Jurisdiction is relinquished.