486 A.2d 517

### In the Matter of the ADOPTION OF BABY BOY ALLEN, a Minor.

### Appeal of CATHOLIC SOCIAL SERVICES OF the DIOCESE OF HARRISBURG, PENNSYLVANIA, INC.

Superior Court of Pennsylvania.

Argued Sept. 20, 1984.

Filed Dec. 21, 1984.

Petition for Allowance of Appeal Granted May 20, 1985.

John H. Bream, Harrisburg, for appellant.

Robert D. Kodak, Harrisburg, for appellee.

Before WICKERSHAM, WIEAND and HESTER, JJ.

PER CURIAM:

Catholic Social Services appeals from the order of the Court of Common Pleas of Dauphin County denying its petition for the involuntary termination of the parental rights of Clinton "Sonny" Rouck to Baby Boy Allen.

Baby Boy Allen was born March 31, 1979 in York Hospital, York County, Pennsylvania. The child's mother, Robin Jean Allen, has consented to the proposed adoption of the child. The appellee, Clinton "Sonny" Rouck, is the father of the child and is presently twenty-eight years old.

In 1978, Clinton Rouck was convicted of forcible rape and was sentenced to two to four years imprisonment. The

child was conceived after Rouck's conviction, but while he was out on bail pending appeal. He was incarcerated both at the time of the baby's birth and at the time of the termination hearing in the lower court, which was held on July 23, 1981.

On July 13, 1982, the lower court filed an opinion and decree nisi denying appellant Catholic Social Services' petition for the termination of Rouck's parental rights. Catholic Social Services filed exceptions to the decree nisi. These were denied and the decree nisi was made final on February 10, 1984. This timely appeal followed.

Catholic Social Services states the issue as follows:

Under the Adoption Act should the parental rights of the father of an illegitimate child be involuntarily terminated when the father is functionally illiterate, unable to read or write, since 1975 has been either imprisoned for forcible rape and other crimes or constantly on parole and welfare, living with a girl friend, has been provided with three attorneys, been brought to Harrisburg for a court hearing on this matter from Graterford Prison by two deputy sheriffs, all at taxpayers' expense, has committed perjury in open court, has never attempted to make any inquiry concerning this child, or to make any contribution to the care, upkeep, medical or other expenses of the child, which has been in the home of approved adoption parents, all for a period of more than five years?

Brief for Petitioner-Appellant at 2.

A number of recent cases have discussed the standard of review applicable in involuntary termination cases.

An appellate court, in reviewing a termination order, must employ a broad, comprehensive review of the record, but is limited in its standard of review to a determination of whether "the trial court's termination of [the respondent's] parental rights is supported by competent evidence." *In re Adoption of James J.*, 332 Pa.Superior Ct. 486 at 490, 481 A.2d 892 at 894 (1984). Stated differently, unless the lower court has abused its discretion or committed an error of law, the order must stand.

Furthermore, the burden of proof on the party seeking to terminate another's parental rights is one of clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

*In re: Involuntary Termination of Parental Rights Concerning the Minor Child: Baby Boy P.*, 333 Pa.Super. 462, 464, 482 A.2d 660, 661 (1984).

Instantly, the lower court found that appellee's minimal education, illiteracy, and imprisonment were major roadblocks confronting him in his attempt to perform his parental duties. Given these factors, the court decided that appellee had done his utmost to locate the child and to show that he did not wish to relinquish his parental rights. We believe that the lower court abused its discretion in so finding.

This Court has recently taken the view that it is in the child's best interest to require that a parent 'exert himself to take and maintain a place of importance in the child's life' (*Appeal of Diane B., supra*, 456 Pa. [429] at 433, 321 A.2d [618] at 620, *quoting In Re: Adoption of J R F*, 27 Somerset L.J. 295 [298], 304–305 (Pa.C.P.1972). With this in mind, we have held that the parent has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child. *See Appeal of Diane B., supra; Jacono Adoption Case*, 426 Pa. 98, 231 A.2d 295 (1967); and *In Re: Adoption of J R F, supra*. Since in all adoption proceedings the ultimate determination is based on an examination of the particular facts, our inquiry must turn to whether this appellant has performed his affirmative duties as fully as possible under his particular circumstances.

*In re Adoption of McCray*, 460 Pa. 210, 216, 331 A.2d 652, 655 (1975).

While we acknowledge that appellee's performance of his parental duties was made more difficult by his illiteracy and his imprisonment, we are unable to agree with the lower

court that appellee made full use of the resources available to him in his attempts to fulfill his responsibilities.

The record establishes the following factors in appellee's favor: (1) When Mr. Kirk Reider from Catholic Social Services asked him to consent to the adoption of the child, appellee refused. (2) Upon his release from prison, appellee traveled to Red Lion in an unsuccessful attempt to locate the child's mother. (3) Appellee testified that he enlisted the aid of a number of people to attempt to reach the child's mother by telephone. (4) Appellee requested that his public defender contact Catholic Social Services about his child. The lower court found that these actions evidenced an intent on appellee's part not to relinquish his parental rights.

We disagree. It is clear from the record that appellee was aware of the child's existence for approximately two years prior to the termination hearing. In that time, appellee spent one day in Red Lion searching for the child's mother. The only other efforts he made to contact her were a number of telephone calls placed by himself or others. Appellant testified that he was unable to locate her. We understand that appellee's efforts were hindered by his imprisonment.

> Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in [developing] a close relationship with the child. Where the parent does not exercise reasonable firmness 'in declining to yield to obstacles,' his other rights may be forfeited.

*In re Adoption of McCray, supra,* 460 Pa. at 216–17, 331 A.2d at 655. We are of the opinion that appellee's few futile attempts to contact the child's mother were insufficient efforts to perform his parental duties, even considering that he was imprisoned at the time.

Appellee was informed that the mother had consented to the adoption and that the child was in the custody of

Catholic Social Services. The lower court felt that appellee's illiteracy explained his attempts to locate the child through the mother rather than by contacting Catholic Social Services. We disagree. The record clearly indicates that appellee knew the child was in the custody of Catholic Social Services. In fact, he requested that his public defender contact Catholic Social Services on his behalf. Thus, appellee was aware of the proper means of discovering information about his child. Nevertheless, he made only a single attempt through his public defender to contact Catholic Social Services. This clearly indicates that appellee did not utilize the resources at his command to locate his child and to fulfill his parental responsibilities.

We recognize that the burden of proof on the party seeking termination of another's parental rights is one of clear and convincing evidence. We find that Catholic Social Services met that burden in this case. The testimony of Kirk Reider established that, by his conduct continuing for a period of at least six (6) months, appellee Rouck evidenced a settled purpose of relinquishing parental claim to his child or had refused or failed to perform his parental duties. *See* Act of October 15, 1980, P.L. 934, No. 163, § 1, 23 Pa.C.S. § 2511(a)(1). In fact, appellee knew of the child's existence for two years prior to the termination hearing and in that time, he contacted Catholic Social Services only once (through his public defender). Appellee has never seen the child; he has never attempted to communicate through the agency with the child or the child's mother; and he has never sent any money or anything of value with reference to the support or maintenance of the child. Appellee's testimony does not refute any of these facts. Rather, appellee attempted to explain why he was unable to fulfill his responsibilities. Even after considering the circumstances confronting appellee, we believe that his conduct was inadequate to refute the evidence presented by Catholic Social Services. *See Matter of Adoption of J.S.H.*, 299 Pa.Super. 90, 97–98, 445 A.2d 162, 166 (1982).

We note that appellee's insistence that he wanted to care for his child and did not wish to relinquish his parental rights does not in itself require denial of the termination petition. "Parental obligation is a positive duty which requires affirmative performance.... [T]he needs of the child whether physical and emotional, cannot be met by a merely passive interest in the development of the child." *In re Green,* 486 Pa. 613, 617, 406 A.2d 1370, 1372 (1979) (citations and quotations omitted).

Since appellee did not utilize the resources at his command in order to affirmatively perform his parental duties, we are of the opinion that the lower court erred in refusing to terminate appellee's parental rights. Appellant Catholic Social Services clearly and convincingly proved that appellee's parental rights should be terminated.

Accordingly, the order of the lower court is vacated and the matter remanded with directions to enter a decree terminating appellee's parental rights. Jurisdiction is relinquished.

WIEAND, J., concurred in the result.