351 Pa. Superior Ct. 256 (1986)
505 A.2d 628
In re T.L.G. and D.A.G.
Appeal of M.D.G.
Supreme Court of Pennsylvania.
Submitted November 4, 1985.
Filed February 27, 1986.
*257 Jeffrey B. Matzkin, Allentown, for appellant.
George K. Keenan, Bethlehem, for appellee.
Before BROSKY, POPOVICH and ROBERTS, JJ.
BROSKY, Judge:
This case is before us on appeal from the trial court's order of June 17, 1985, finding that appellant "refused and failed to perform his parental duties in regard to T.L.G. and D.A.G. for a period of at least six (6) months," and terminating appellant's parental rights to his two minor children. Appellant argues that it has not been shown by clear and convincing evidence that he failed or refused to perform his parental duties for a period in excess of six months. We agree, and, accordingly, we reverse.
Appellant and appellee, the natural parents of the children in question, were living together, unmarried, in Texas on July 7, 1978, when the two children were born. In August of 1979, appellee moved to Pennsylvania, taking the children with her. Appellant visited with the children in Pennsylvania during Christmas of 1979, but the police were called because of an argument between appellant and appellee, and the visit terminated unpleasantly. In the summer of 1980, the children visited appellant in Texas, and again a squabble arose, concerning when the children would be returned to appellee in Pennsylvania. In 1981, the parties *258 met in Pennsylvania with their attorneys to attempt to reach an agreement on support and visitation, but no agreement could be reached. Appellant's last visit with the children occurred in Texas during the summer of 1982.
Appellant was able to speak with the children by telephone for a period of time, but after mid-1982 appellee refused to permit the children to talk with him even by phone from her aunt's house. She also maintained an unlisted phone number. Appellant stayed informed about the children by contacting various relatives of appellee. Through the years, appellant sent gifts to the children on holidays and birthdays.
On February 22, 1984, appellee filed a petition for the involuntary termination of appellant's parental rights. A hearing was held on April 27, 1984. The trial judge listened to the testimony and concluded that appellant did not attempt to visit with the children since the summer of 1982, and had no contact whatsoever with them for a period of eight months (from July 7, 1983 until March of 1984); that he purposefully declined to comply with the mother's (unilaterally-imposed) conditions which would have enabled him to visit with the children; that he failed to support the children throughout the years; that besides the gifts which appellant sent to the children two or three times a year, and regular phone calls to appellee's aunt, the record was devoid of any evidence that appellant used any other means to maintain a place of importance in the lives of the children; and that appellant refused and failed to perform his parental duties for a period of at least six months. The trial court therefore terminated appellant's parental rights on the basis of 23 Pa.C.S. § 2511.[1]
Even where it is established that a parent has failed to perform parental duties for a period in excess of six months, such a finding does not, in and of itself, support an *259 order terminating parental rights. In re Involuntary Termination of Parental Rights of Geraldine Mae Santelia to Anthony Dino Pellegrino, 318 Pa.Super. 413, 465 A.2d 21 (1983). Rather, the trial court must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of the circumstances, clearly warrants permitting the involuntary termination of said parent's parental rights. In re Adoption of Orwick, 464 Pa. 549, 347 A.2d 677 (1975). The Superior Court's scope of review in such a case is limited to a determination of whether the decree of termination is supported by competent evidence. In the Matter of the Adoption of G.T.M., 506 Pa. 44, 483 A.2d 1355 (1984).
Appellee conceded at the hearing that appellant continued making payments on appellee's automobile after appellee moved to Pennsylvania, and that appellant paid $400.00 in 1981-82 and $140.00 since 1982 on the childrens' behalf. Appellant testified that he had placed $3,500.00 for the children in a bank account in Texas (although he did not produce any records to substantiate his testimony). Appellee's aunt and godmother, Marian Balleck, testified that, with the exception of a ten-month period when appellee first moved to Pennsylvania, she was on "very good and very friendly" terms with appellee[2] (to the point of standing in for appellee's mother during the wedding of appellee to her present husband); that appellant called her at least once a month, sometimes several times a week, from Texas to inquire about the children; and that appellant did not know appellee's current address [appellee having moved in 1983], but would send cards and gifts to the children through her. Ms. Balleck identified photographs that she had taken of the children in clothing that appellant had purchased and sent up from Texas for the children on different occasions. At various times, appellant sent money to the aunt to buy things for the children, with instructions not to tell anyone *260 where the money had come from. The trial court did not comment on the credibility of Ms. Balleck's testimony.
From the testimony of appellant, appellee, and appellee's aunt, it is clear that appellant attempted to maintain contact with his children, and that various conditions, including the inability of appellant and appellee to get along together and the distance (2,000 miles) separating them, prevented appellant from maintaining the amount and quality of contact that appellant sought. Not having appellee's most recent address or her unlisted telephone number, he was unable to communicate directly with the children without appellee's consent. He did send gifts, and make regular telephone inquiries of the aunt concerning the needs of the children. He also sent money to the aunt to be used for the children without appellee being aware of its source.
In In Re Adoption of Ostrowski, 324 Pa.Super. 216, 471 A.2d 541 (1984), a panel of our court reversed the trial court in a case factually similar to the case before us,[3] finding no evidence of the appellant/father's settled purpose of relinquishing his parental claim or his failure to perform parental duties. In Ostrowski, the appellant, who lived 800 miles from his child, visited with the child whenever he was in the area. He sent gifts and cards on birthdays and holidays, established a savings account for the child, and maintained medical coverage for him. There were two periods in excess of six months in which the father had no physical contact with the child. In finding an abuse of discretion on the part of the trial court, our court noted that a failure to *261 perform parental duties for a period in excess of six months, standing alone, would not support an order terminating parental rights; rather, the trial court would then be obliged to examine the individual circumstances and any explanation offered by the parent in order to determine if the evidence, in light of the totality of the circumstances, clearly warranted permitting the involuntary termination of parental rights.
The burden of proof is upon the party seeking termination to establish by "clear and convincing" evidence the existence of the grounds for termination. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In Re: T.R., 502 Pa. 165, 465 A.2d 642 (1983). We have very carefully examined the record in the case before us, and we find, as did our court in Ostrowski, considering the totality of the circumstances, that the record does not support a determination that appellee has proven by clear and convincing evidence that appellant has exhibited such failure to perform parental duties as would justify the involuntary termination of his parental rights.
We therefore reverse the trial court's order and remand this case for entry of an order in accordance with this Opinion. Jurisdiction is relinquished.
POPOVICH, J., concurs in the result.
NOTES
[1] The statute provides, in pertinent part: "The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds: (1) The parent by conduct continuing for a period of at least six months . . . has refused or failed to perform parental duties."
[2] This is contrary to the trial court's unsupported finding of fact that the aunt and appellee were not on speaking terms with one another.
[3] The recent decision of our Supreme Court in In Re: Adoption of Faith M. and Victoria M., 509 Pa. 238, 501 A.2d 1105 (1985) is distinguishable from the case before us. In that case, in addition to failing to comply with a support order which had been voluntarily entered into (in the amount of $130.00 per month), the parent whose rights were terminated by the trial court made no effort to visit his children during a five year period, wrote no letters to them, and made only one phone call to one of his children during that period. In addition, the parent had hired legal counsel to terminate the parental relationship of his second wife's former husband, and was well aware of the consequences of failing to perform parental duties. The Supreme Court therefore concluded that the trial court had not abused its discretion in terminating the father's parental rights.