514 A.2d 140

**In re Involuntary Termination of Kenneth Lee STICKLER, Jr., Bradley Lynn Stickler and Kim Louise Stickler.**

**Appeal of Kenneth L. STICKLER, Sr.**

Superior Court of Pennsylvania.

Submitted Feb. 27, 1986.

Filed Aug. 11, 1986.

Michael H. Small, Palmyra, for appellant.

Pamela A. Weiss, Lebanon, for appellees.

Before CAVANAUGH, TAMILIA and CERCONE, JJ.

TAMILIA, Judge:

This case is before us on appeal from the trial court's Decree of May 29, 1985, terminating the parental rights of

appellant, Kenneth Lee Stickler, Sr., to his three minor children.

As stated by the trial court, the sole issue before us is whether the respondent, by his conduct for a period of at least six months, has either evidenced a settled purpose of relinquishing parental claim to these children or has refused to perform parental duties.

The appropriate standard of review in cases involving the termination of parental rights is limited to a determination of whether the decision to terminate parental rights is supported by competent evidence. If review of the record does not reveal an abuse of discretion, an error of law or insufficient evidentiary support for the lower court's findings, the Order must stand. *Lookabill v. Moreland,* 336 Pa.Super. 520, 485 A.2d 1204 (1984), *Matter of Adoption of Baby Boy Allen,* 337 Pa.Super. 133, 486 A.2d 517 (1984); *see also In re Adoption of B.K.W.,* 348 Pa.Super. 333, 502 A.2d 235 (1985).

In this case, the facts found by the court and supported by the record are as follows.

The natural parents of these children were married in 1975 and divorced in October of 1982. The three children subject of the termination proceedings are Kenneth, born September 19, 1976, Bradley, born February 15, 1979 and Kim, born August 23, 1980. The children have been with the appellee/mother since birth and she has been the primary custodian since the date of separation in July 1982 and following the divorce of the parents in October 1982. Prior to the divorce, the father failed to support his children for a period of at least nine months by gambling his weekly paycheck on horse races at the Penn National Race Track. The sole exception to that pattern of non-support, to the date of divorce was a single months contribution resulting from court attachment of appellant's wages. In addition to his failure to pay support, appellant failed to regularly exercise his visitation rights with the minor children. Ap-

pellee, Brenda, married Dennis Echternach in May 1984, and she and her husband planned for him to adopt the children. In February of 1983, appellant, after a plea of guilty, was sentenced to serve a term of imprisonment of not less than five nor more than ten years for arson and related offenses. While in prison, appellant receives $25 per month and money from his family but has failed to write or send cards or presents to his children. During the marriage he was an inveterate and compulsive gambler and failed to provide the basic care required for his family, borrowing money and selling items of his personal property to support the gambling habit.

The lower court concluded from this evidence that the appellant has failed to perform parental duties as required by law for a period in excess of six months.

As we said in *In re Adoption of Baby Boy J.*, 512 A.2d 689, (Opinion by Tamilia, J., 1986):

> Parental rights may be terminated if a parent, by conduct continuing for a period of at least six months, either has evidenced a settled purpose of relinquishing his parental claim to his child or has refused or failed to perform parental duties (23 Pa.C.S.A. § 2511(a)). The performance of parental duties is an affirmative obligation to love, protect, support and maintain communication and association with the child. Consequently, being a parent is more than a passive state of mind, it is an active occupation, calling for a constant affirmative demonstration of parental love, protection and concern. A parent must exert himself to take and maintain a place of importance in the child's life. *In re Adoption of M.J.H.*, 348 Pa.Super. 65, 501 A.2d 648 (1985). The proof required in terminating parental rights is by evidence that is clear and convincing. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)
>
> .    .    .    .    .

*Id.* at 691.

Whether a parent has evidenced a settled purpose of relinquishing his parental claim to a child, or has refused

or failed to perform parental duties for a period of at least six months, must be analyzed in light of any explanation offered by the parent. *Lookabill v. Moreland,* 336 Pa.Super. 520, 485 A.2d 1204 (1984); *In re Adoption of Ostrowski,* 324 Pa.Super. 216, 471 A.2d 541 (1984); *see also In Re T.L.G.,* 351 Pa.Super. 256, 505 A.2d 628 (1986). *Id.* at 692.

In this case, the only explanation given by the appellant is that he has the "disease" of gambling. Nowhere is it indicated that he sought rehabilitation or placed his income beyond the reach of his affliction by way of wage assignments or attachments, or despite the compulsion attempted to maintain a parental relationship with the children so they would receive emotional and physical support from him. Even from prison, some relationship could have been maintained in preparation for release, but it appears any plans are on hold until, at the earliest, 1988 (barring credit for time already served) when the oldest child will be twelve years of age.

With a prison sentence of five to ten years, appellant will be without any meaningful and significant contact with the children, and as Judge Gates aptly pointed out, the prior lapse, which in itself was legally sufficient to warrant termination, should not be tolled by the appellant's incarceration. We may not reverse the lower court, absent an abuse of discretion, which is not present here. These children will not be left in limbo by termination, as the mother and her new husband plan to have them adopted by him, thus giving the children an intact and secure foundation for their proper development.

The legislature has, in recent years, severely restricted the ability of parents to rely on their natural ties to the children to defeat any attempt to bring order, stability, affection and care due them when the parents are guilty of gross neglect or de facto abandonment. The life of a child is unique and priceless and its best interest must supersede that of parental whim to retain a possessory interest based

on the act of procreation, when parenting has failed, producing a vacuum where love and care are vital.

Decree terminating parental rights is affirmed.

CERCONE, J., dissents with opinion.

CERCONE, Judge, dissenting:

I respectfully dissent from the lead opinion on the grounds that the majority's decision to terminate appellant's parental rights is not supported by clear and convincing evidence. *See, Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

The majority correctly states that prior to his divorce from appellee appellant failed to adequately support his children as much of his income was squandered on gambling. However, the evidence adduced at appellant's termination hearing does not conclusively support the majority's statements that appellant failed to regularly exercise his visitation rights with his minor children subsequent to his divorce or that appellant has failed to write or send cards or presents to his children during his term of incarceration. Appellee testified that from the time the parties separated until appellant's incarceration, approximately fifteen months, appellant exercised his visitation privileges twelve to fifteen times. Appellant stated that during visitation periods he took the children to visit his mother and sister, played games with them, and went fishing with his son. However, since being incarcerated appellant's contact with the children has diminished. Appellant, at the termination hearing, gave as the reason for less contact with his children that since he was jailed, appellee has thwarted his efforts to communicate with the children by refusing his phone calls and not acknowledging the cards he sent to the children on various occasions. This testimony was corroborated by appellant's mother and sister who stated that when they asked to take the children to visit their father appellee told them that the children had other plans. Appellee also stated that she did not feel that it was her responsibility to take the children to see their father. Appellant's witnesses

further stated that they sent cards to the children at appellant's request and that he inquired about the children within a six month period prior to this proceeding. Appellee acknowledges that she would not accept appellant's phone calls as they were made collect, a prison requirement, and that it was appellant's mother, not appellant, who sent the children cards and money, on appellant's behalf at Christmas, 1984 and a birthday card to one of his sons in February, 1985. Appellee's testimony was substantiated by that of her husband.

The majority places too great an emphasis on the length of appellant's sentence, which we note could expire in two years, concluding that it precludes any meaningful and significant contact with the children. It is settled law in this Commonwealth that appellant's parental rights cannot be terminated solely on the fact that appellant is incarcerated. *In Re Adoption of M.T.T.,* 467 Pa. 88, 259 A.2d 564 (1976). This is especially true when, despite incarceration, the prisoner strives to maintain an affirmative relationship with his children. *See, In Re Adoption of Sabrina,* 325 Pa.Superior Ct. 17, 472 A.2d 624 (1984). The record discloses that while in prison appellant has no resources to care for or support his children.[1] This circumstance alone cannot justify a finding of abandonment of parental duties. *Adoption of M.T.T., supra.* Appellant and his witnesses set forth evidence of appellant's repeated attempt to remain in contact with his children; appellant tried to call, send cards and seek permission from appellee to have his mother bring the children to visit him, all within six months of the instant proceeding herein. Appellee by her own admission, has discouraged these attempts and maintains that it is not her responsibility to take the children to see their father.

Our law recognizes there may be situations where the parent who has custody of the minor may create such barriers as to impede communications between the absent parent and the child. Where the absence of communica-

---

**1.** Appellant earns approximately $25.00 per month at his prison job and from this income he must supply his own sundries and his share of the T.V. cable.

tion results from the deliberate conduct of the opposing parent, it may not be used as a basis for termination of parental rights, even when the lack of contact may have extended significantly beyond the statutory period ... A parent's efforts in maintaining a relationship with the child must always be evaluated in light of the obstacles confronting that parent.

*In Re Adoption of J.S.M., Jr.,* 492 Pa. 313, 317, 424 A.2d 878, 880 (1981).

The burden of proof is upon the party seeking termination to establish by "clear and convincing" evidence the existence of the grounds for termination. *In Re: T.R.,* 502 Pa. 165, 465 A.2d 642 (1983). We have carefully examined the record in the case before us, and while we find that appellant is not an exemplary father, considering the totality of the circumstances, the record does not support a determination that appellee has proven by clear and convincing evidence that appellant has exhibited such failure to perform parental duties as would justify the involuntary termination of his parental rights. The fundamental liberty interest of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents. *Santosky v. Kramer, supra.*

The majority opines that the legislature, in recent years, severely restricted the ability of parents to rely on their natural ties to the children to defeat any attempt to bring order, stability, affection and care due them when parents are guilty of gross neglect or *de facto* abandonment. But, I believe that to deprive a parent of parental rights, even one who falls below the standard of conduct depicted from a law abiding citizen and who as a result finds incarceration as part of the penalty, in face of evidence which demonstrates a degree of concern, affection and love that ineffably exists between a natural parent and his or her child is contrary to the intent of the law having to do with the legally pronounced termination of parenthood. The law does not presume drastic results in every case based on an

64

isolated period of lack of support, financial or emotional, six months in duration.

Accordingly, I would reverse the order of the trial court terminating appellant's parental rights.