**In Interest of Presto**

*Matthew Blumberg,* for Pike County Children and Youth Services.

*Robert Bernathy,* for Allan Courtright.

THOMSON, Jr., *P.J.,* October 16, 1992—This matter is before this Court on a request by both counsels to render a decision on the parental rights of Allan Courtright.

The facts of this case are not in dispute. On Wednesday, September 16, 1987, Chief Robert E. Stevens of the Matamoras Police Department was dispatched to 505 Avenue L, Matamoras, Pennsylvania. He arrived at the residence and was met by an angry, intoxicated

Carol Ann Presto. He then gained control of the situation and began an investigation. In his report he noted that the condition of the home was unfit for human occupancy and he believed that the children were being abused. Chief Stevens then reported his suspicions to the Pike County Children and Youth Services.

Pike County Children and Youth Services did a home study on September 24, 1987 on Carol Ann Presto and her five children. The conclusions of that study appear below.

*"Recommendations*

"There are six adults, sometimes seven, and six children living in a two bedroom home without electricity, hot water or central heat. The home is not fit for human habitation.

"The atmosphere under which these children have to live is deplorable.

"It is therefore recommended that the children of Carol Ann Presto, namely William Presto, Antonette Presto, Rosemary Courtright, Allan Courtright (Jr.) and the two other children, Mary Presto and Danielle Presto be removed from the home and placed in foster care."

A hearing was held to determine whether the children should be placed in foster care, and on October 7, 1987 this court answered the question affirmatively. Carol Ann Presto, through counsel then asked this court to return her children on the grounds that she had completed the agreement drawn up by her and the Pike County Children and Youth Services. The agreement stated that she would provide a clean home for the children and would undergo counseling. A hearing was held on February 22, 1988 on this matter, and after extensive testimony an opinion was rendered on May

13, 1988. The court held that the children should remain in foster care. (See opinion)

Then on February 28, 1989, Carol Ann Presto voluntarily terminated her parental rights to all five children. Three of those five children have been adopted. The two remaining children are the subject of this opinion.

The father of those two unadoptive children is Allan Courtright. A hearing was held at the request of the Pike County Children and Youth Services to involuntarily terminate the rights of Allan Courtright on February 28, 1989. Testimony given at the hearing by the mother stated that he was not the father of the children.

The court then ordered blood tests on May 17, 1989 to determine if Allan Courtright was the father of any of the children found at the home on September 16, 1987. The blood tests showed that he was in fact the father of Allan (Jr.) and Rosemary Courtright.

The Pike County Children and Youth Services then again petitioned this court to terminate the rights of Allan Courtright. Prior to the hearing, the parties approached the court to inform us that they would attempt to reach an amicable resolution. An agreement could not be reached by the parties.

Then on August 19, 1992, the Pike County Children and Youth Services made a motion for court determination and decision based on the evidence presented at the original hearing.

A hearing was held on the motion for determination and decision on September 8, 1992. The evidence presented at the hearing regarding the children was unchanged. Allan (Jr.) and Rosemary Courtright have been in foster care since October of 1987 and the families who care for the children wish to adopt them.

On the other hand, the circumstances surrounding the father of the children have changed. At the time of the original involuntary termination hearing, the father was a prisoner in the Pennsylvania State Prison system. He was incarcerated in that system from September 26, 1986 until April 12, 1992. During his stay he escaped, and was eventually placed back in the prison system.

He was paroled on April 12, 1992 and relocated to New Jersey. Several days later he was arrested in a stolen car but was released for lack of evidence. He was again rearrested a short time later for violating a court order issued by New Jersey which ordered him to stay away from his family. The State of New Jersey placed him in jail for 30 days for violating the order. Shortly after his release from jail he was arrested and charged with rape and kidnapping. At this time he waits trial in the Hunterdon County Jail in New Jersey. This updated evidence was supplied by the Pike County Children and Youth Services.

Pennsylvania case law is clear, parental rights may not be terminated simply because a parent is incarcerated. *In re Adoption of McCray,* 460 Pa. 210, 216, 331 A.2d 652, 655 (1975). The trial court must focus on whether the parent has utilized the resources available to him or her while in prison to continue a close parental relationship. *In the Interest of J.E.S. and C.S. Minors, Appeal of J.S., Jr.,* 365 Pa. Super. 291, 294, 529 A.2d 514, 515 (1987).

The evidence presented at the original hearing on February 28, 1989 showed that the father had failed to make contact with his children for over six months. He also failed to send any financial support to his children even though he earned money while he was incarcerated.

Accordingly, this court based on the evidence presented at the original hearing could involuntarily terminate his parental rights. 23 Pa.C.S. §2511(a)(1); *In re Involuntary Termination of Kenneth Lee Stickler, Jr., Bradley Lynn Stickler and Kim Louise Stickler, Appeal of Kenneth L. Stickler, Sr.,* 356 Pa. Super. 56, 59, 514 A.2d 140, 142 (1986); *In the Interest of J.E.S. and C.S. Minors, Appeal of J.S., Jr., supra.*

However, complicating this court's decision is that the petitioner and Allan Courtright have waited almost three years to inform this court that they could not reach an amicable decision. In that time the father has been paroled from the prison system in Pennsylvania and now finds himself incarcerated in the prison system in New Jersey.

These actions of Allan Courtright have left the lives of these children in legal limbo. Although this court has weighed the rights of the parent, Allan Courtright, this court may not close its eyes to the children's best interest.

Our Superior Court has stated that the Pennsylvania:

"[L]egislature has, in recent years, severely restricted the ability of parents to rely on their natural ties to the children to defeat any attempt to bring order, stability, affection and care due them when the parents are guilty of gross neglect or de facto abandonment. *The life of a child is unique and priceless* and its best interest must supersede that of parental whim to retain a possessory interest based on the act of procreation, when parenting has failed, producing a vacuum where love and care are vital." (emphasis added) *Stickler, supra* at 60-61, 514 A.2d at 142.

Furthermore, our own Supreme Court has held that "[a] child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met

by a merely passive interest in the development of the child." *In re Burns,* 474 Pa. 615, 624, 379 A.2d 535, 540 (1977).

This court has long believed that if it is to err it will err on the side of a child. It is our belief that Allan Courtright's habitual criminal behavior is reason enough to terminate his parental rights. Furthermore, based on the evidence presented at the original hearing we also have the right to terminate his parental rights. The life of both Rosemary and Allan Jr. are priceless and unique and it is time that they and their prospective adopted families close this chapter on their lives.

## ORDER

And now, October 16, 1992, a motion having been made by the petitioner, Pike County Children & Youth Services to involuntarily terminate Allan Courtright's parental rights is granted based on the evidence at the original hearing on February 28, 1989 and Allan Court-right's continued negligence in his parental duties.