J-S60005-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 881 MDA 2018 |

Appeal from the Order Entered April 24, 2017
In the Court of Common Pleas of Clinton County Orphans' Court at
No(s):  16-2017

BEFORE:   SHOGAN, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 29, 2018**

Appellant, M.S. ("Father"), appeals from the order granting the petition of B.M.B ("Mother") and Mother's paramour, J.S.L.[1] ("Stepfather"), seeking to involuntarily terminate Father's parental rights to his son, E.A.S. ("Child"), born in April of 2010, pursuant to 23 Pa.C.S. § 2511(a)(1) and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.   For the reasons that follow, we affirm.

The trial court presented the following findings of fact, which set forth a factual background for this matter:

1.  Petitioners [Mother] and [Stepfather] currently reside together [in] Renovo, Pennsylvania.

---

[1] We note that the testimony of record establishes that Mother and Stepfather intend to be married.  N.T., 12/13/17, at 9, 12, 17.

---

*   Retired Senior Judge assigned to the Superior Court.

2. [Child] was born [in] April [of] 2010 in Renovo. [Stepfather] was present at [Child's] birth.

3. [Father] is the natural father of [Child]. [Father] was not present at [Child's] birth and no specific reason was given for his absence.

4. [Mother and Stepfather] have resided in Renovo[,] a town of approximately 1,800 people since [Child's] birth.

5. [Father's] residence is in Coal Township, which the [trial c]ourt has been advised is located in Northumberland County, approximately two hours by automobile from Renovo.

6. [Father's] contact with [Child] since [Child's] birth up until Christmas of 2015 has been nonexistent or at best negligible.

7. During the 2015 Christmas season [Father] attempted to contact [Child] but was unable to do so because of resistance from [Mother]. No further effort at seeing [Child] was made at this time.

8. Since [Child's] birth [Father] has had relatives and friends in the Renovo area some of [whom] are also friends of [Mother and Stepfather] and who were aware of [Mother's] current residence in Renovo. [Father] has testified that he feels no obligation to ask these sources where [Mother and Stepfather] resided.

9. It appears that [Father] has formed no degree of bonding with [Child] up through the present time.

10. Child knows [Stepfather] as his father and has participated in family activities with [Mother and Stepfather] and their two children born after [Child's] birth.

Opinion and Order, 4/27/18, at 1-2.

On September 14, 2017, Mother and Stepfather filed a petition to involuntarily terminate Father's parental rights to Child.[2]  On September 18, 2017, the trial court entered an order that, among other things, appointed Patrick Johnson, Esquire, to represent [Child].  The trial court held hearings on December 13, 2017, and February 22, 2018.  On February 26, 2018, the trial court entered an order allowing the parties to file additional briefs with the trial court.  On February 27, 2018, Mother and Stepfather filed a proposed finding of facts and conclusion of law with the trial court.

On April 27, 2018, the trial court entered its opinion and order, which involuntarily terminated Father's parental rights to Child.  This timely appeal by Father followed.  Both Father and the trial court have complied with Pa.R.A.P. 1925.

Father presents the following issue for our review:

> Should the parental rights of [Father] have been terminated with respect to [Child] considering the intentional barriers erected

---

[2] We note that Father did not challenge, either in the trial court or on appeal, Stepfather's standing to join Mother in the petition to terminate Father's parental rights.  However, a court should not raise the issue of standing *sua sponte*.  **See In re Adoption of Z.S.H.G.**, 34 A.3d 1283, 1288-1289 (Pa. Super. 2011) (setting forth explanation of relevant law holding that whether a party has standing to maintain an action is not a jurisdictional question that may be raised *sua sponte*).  Furthermore, whether Stepfather had standing to cosign the petition for termination of Father's parental rights is of no moment in light of the fact that there is no doubt that Mother had standing to file the petition.  **See** 23 Pa.C.S. § 2512(a)(1) (stating "A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by . . . [e]ither parent when termination is sought with respect to the other parent").

- 3 -

by Mother to prevent [Father] from exercising his parental rights[?]

Father's Brief at 4. Father argues that the trial court should have considered the effect of Mother's intentional barriers in preventing Father from exercising his parental rights.

In reviewing an appeal from an order terminating parental rights, we adhere to the following well-established standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; [*In re:*] *R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, ___ Pa. ___, 34 A.3d 1, 51 (2011); *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal

- 4 -

conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064, 1066 (1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained that:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the

- 5 -

needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

As previously stated, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b), which provide as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S. §§ 2511(a)(1) and (b).

This Court has explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but under Section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super.

2008) (*en banc*). In ***In re Z.S.W.***, 946 A.2d 726 (Pa. Super. 2008), this Court

stated:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. ***In re Adoption of R.J.S.***, 901 A.2d 502, 510 (Pa. Super. 2006). In addition,

>> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

> ***In re Adoption of Charles E.D.M.***, 550 Pa. 595, 708 A.2d 88, 91 (Pa. 1998).

>> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

> ***Id.*** at 92 (citation omitted).

***In re Z.S.W.***, 946 A.2d at 730.

In addition, we are mindful of the following:

Although it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all

explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

The Supreme Court has defined parental duty as follows:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life'.

**Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.** . . .

Where a non-custodial parent is facing termination of his or her parental rights, the court must consider the non-custodial parent's explanation, if any, for the apparent neglect, including situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to

impede free communication and regular association between the non-custodial parent and his or her child. **Although a parent is not required to perform the impossible, he must act affirmatively to maintain his relationship with his child, even in difficult circumstances. A parent has the duty to exert himself, to take and maintain a place of importance in the child's life.**

Thus, a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment. A parent cannot protect his parental rights by merely stating that he does not wish to have his rights terminated.

*In re B., N.M.*, 856 A.2d 847, 855-856 (Pa. Super. 2004) (citations omitted) (emphases added). Also, "[t]he parent wishing to reestablish [his] parental responsibilities bears the burden of proof relative to post-abandonment contact." *In re C.L.G.*, 956 A.2d at 1006 (quoting *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008)).

After hearing two days of testimony from the parties and their witnesses, the trial court analyzed the evidence and legal arguments in support of termination pursuant to Section 2511(a)(1) as follows:

23 Pa.C.S. §2511(a)(1) governs the involuntary termination of parental rights. Alternative [sic] grounds exist for such termination. First, if for a period of at least six months immediately preceding the filing of the Petition [the respondent] has evidenced a settled purpose of relinquishing parental claim to a child. The second ground looks at whether [the respondent] has failed to perform parental duties.

In the present case[, Father's] testimony does not really address the five years following [Child's] birth in 2010. [Father] has presented a vague case involving his coming to the Renovo area and not being able to see [Child] because of his being

- 9 -

arrested and placed in jail. Few details about these episodes have been presented although [Father] admits to being charged with DUI and carrying a blackjack. [Father] blames these incidents on altercations with [Stepfather] although it does not appear that [Stepfather] has been arrested for anything arising from these claims.

[Father] has further argued that he did not know where [Mother and Stepfather] lived in Renovo and felt that he had no duty to inquire from those who [Father] knew[,] or elsewhere[,] as to their residence. The [trial c]ourt cannot accept this thinking as taking reasonable steps to establish contact with [Child].

It further appears that the relationship between [Father] and [Mother] has been an acrimonious one and continues to remain so. The reasons for this have not been disclosed.

[Father's] counsel has submitted two appellate decision in opposition to involuntary termination of [Father's] parental rights. The first of these is In re TLG and DAG, 351 Pa. Super. 256, 505 A.2d 628 (1986). In that case[,] the natural father resided in Texas while the mother resided in Pennsylvania. While the parents did not have an amicable relationship[,] which may have interfered with the father's physical contact with the child, [the father] did send cards and gifts and provided other financial support. In the present case there seems to be a lack of such effort. [Father] was not hampered by the distance separating the parties. Further, [Father] felt he had [no] obligation to try to ascertain [M]other's address. In essence[, Father] fell short of performing parental duties toward [Child].

The second case submitted is Commonwealth of Pennsylvania v. Alice Arnold, 445 Pa. Super. 384, 685 A.2d 836 (Pa. Super. 1995). In that case termination was upheld based on a long history of failure to perform parental duties, and the [trial c]ourt has discerned nothing in that case to support the denial of termination in this matter. The Court in that case did discuss what a parent must do in dealing with any claimed barriers to [the parent] exercising parental rights, and that requires one to exhibit reasonable firmness in attempting to overcome the barriers or obstructive behavior of others. The testimony presented by [Father] did not rise to this level.

Perhaps the most compelling reason for termination lies in the fact that [Child] is now eight years of age, and there is virtually no bond between [Child] and [Father]. To try to forge one now would be problematical in view of [Child's] existing relationship with [Mother and Stepfather]. [Child] has only known [Stepfather] as his father since birth. To inject [Father] into that role under these circumstances might well cause emotional issues and problems that would outweigh the maintaining of [Father's] parental status.

In essence[,] the [trial c]ourt concludes that [Father,] by clear and convincing evidence has failed to perform parental duties with regard to [Child] for a period far in excess of six months. Further, [Father's] attitude about the situation does not seem to be conducive to remedying that failure. Accordingly, the [trial c]ourt will grant the prayer of [Mother] to terminate [Father's] parental rights.

Opinion and Order, 4/27/18, at 2-3.

In his appellate brief, Father concedes that he has not had contact with Child for at least six months immediately preceding the filing of the petition. Father's Brief at 6. Father explains his lack of contact with Child by claiming that Mother has hampered his ability to participate in Child's life. Father asserts that Mother refused to allow Father to see Child, and that his attempts to locate Child were thwarted because Father did not know where Mother and Child resided. *Id*. Father claims that "Mother deliberately created obstacles and barriers to prevent Father from seeing, having any contact, or being able to communicate whatsoever with [Child]." *Id*. at 7. In addition, Father contends that he "lives three hours away from Renovo, Pennsylvania where the Mother and [C]hild resided[,] had no relatives in the Renovo area, no contacts in the area and no reasonable way of locating the Mother and

[C]hild." *Id*. Also, Father argues that "Mother did various acts including moving without telling [Father] of her new address, blocking Facebook messages from both [Father] and others who tried to intervene on [Father's] behalf, preventing [Father] from bringing presents and gifts to [C]hild and otherwise having any contact whatsoever with [C]hild." *Id*. at 7-8.

Here, the trial court found clear and convincing evidence that Father failed to perform parental duties in excess of the six-month period. After a thorough review, we conclude that there was competent evidence to support the trial court's finding. Concerning Father's claim that he was prevented from performing his parental duties, we reiterate the following:

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M.*, 856 A.2d at 855 (citations omitted). Although Father alleges that he attempted to contact Child and be a part of Child's life, the evidence showed that Father failed to utilize all available resources to establish contact with Child. Indeed, the record contains no evidence that, in the six months prior to the filing of the termination petition, Father took reasonable steps to ascertain Child's whereabouts and send any correspondence, letters, or gifts to Child. In fact, the following testimony offered by Father supports this determination:

Q [Since] December of 2015 you've made no attempts to send anything to your son?

A Yes, I have. I have made attempts just to be in his life. She don't let me. I mean, what am I supposed to do?

Q Those attempts were trying to contact Mother through Facebook?

A What else am I supposed to do? Drive three hours up, three hours back? Come on.

Q To see your son?

A Yeah.

Q You were asking if you should drive six hours round trip to see your son?

A Yeah. Three kids I take care of. I have custody of three of them.

N.T., 12/13/17, at 27-28. This testimony supports that Father failed to utilize all available resources to preserve the parental relationship and failed to exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Thus, by conduct continuing for at least six months immediately preceding the filing of the termination petition, Father failed to perform parental duties. Hence, we conclude there is competent evidence in the record to support the trial court's findings with regard to the first two lines of inquiry of the test set forth in *In re Z.S.W.*, 946 A.2d at 730.

Next, regarding the third line of inquiry of the test set forth in *In re Z.S.W.*, which requires a review under section 2511(b), we examine whether

termination of parental rights would best serve the developmental, physical and emotional needs and welfare of Child. *In re C.M.S.*, 884 A.2d 1284, 1286-1287 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted).

Pennsylvania courts have held that, in a termination of parental rights case, the trial court is required to consider "whatever bonds may exist between the children and [a]ppellant, as well as the emotional effect that termination will have upon the children." *In re Adoption of A.C.H.*, 803 A.2d 224, 229 (Pa. Super. 2002) (quoting *In re Adoption of A.M.R.*, 741 A.2d 666 (Pa. 1999) (citations omitted)).

In *In re K.Z.S.*, this Court stated that there are some instances where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child. *In re K.Z.S.*, 946 A.2d at 762. The panel explained that, in cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. *Id.* at 763. "The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *Id.* The panel in *In re K.Z.S.* emphasized that, in addition to a bond examination, the court can equally emphasize the safety needs of the child and also should consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, the panel stated that the court

should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child. *Id*.

In *In re K.Z.S.*, this Court observed that, where the subject child had been almost constantly separated from his mother for four years, any relationship between the two had to be "fairly attenuated," such that the fact that some bond existed did not defeat the termination of the mother's parental rights. *Id*. at 764. Based on the strong relationship that the child in *In re K.Z.S.* had with his foster mother, the child's young age, and his very limited contact with his mother, the panel found competent evidence to support the trial court's termination of the mother's parental rights, even without a bonding evaluation.

In this case, we conclude the trial court correctly determined Mother and Stepfather satisfied the burden of proof that the termination of Father's parental rights would best serve the needs and welfare of Child pursuant to 23 Pa.C.S. § 2511(b). The trial court recognized that Child was over eight years old at the time of the hearings and there is virtually no bond between Child and Father. Opinion and Order, 4/27/18, at 3. The trial court found Child has known Stepfather as his father since birth. *Id*. The record establishes that Father has seen Child twice in Child's lifetime, and that Father was introduced as a friend. N.T., 12/13/17, at 10. In addition, the record contains competent evidence from which the trial court correctly concluded

that Mother and Stepfather satisfy Child's needs and welfare. With regard to Stepfather, the record reflects that he financially provides for Child. ***Id***. at 15. In addition, he participates in Child's recreational activities, education, and physical needs by attending various medical appointments. Thus, the trial court properly discerned that terminating Father's parental rights would have no effect on Child for there is little, if any, bond that would be severed.

Because the trial court's determinations are supported by competent evidence, we discern no abuse of discretion or error of law on the part of the trial court when it terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b). Consequently, we affirm the order terminating Father's parental rights to Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2018