J-S77030/14

IN RE: INVOLUNTARY TERMINATION    :    IN THE SUPERIOR COURT OF
OF PARENTAL RIGHTS TO E.A.F., Jr.   :    PENNSYLVANIA

                                   :

APPEAL OF E.A.F., Sr., FATHER       :

                                   :    No. 1990 EDA 2014
                                   :

Appeal from the Decree entered June 13, 2014,
in the Court of Common Pleas of Lehigh County,
Orphans' Court Division, at No. A2013-54

BEFORE: STABILE, JENKINS, AND STRASSBURGER*, JJ.

MEMORANDUM BY JENKINS, J.:                    **FILED JANUARY 15, 2015**

E.A.F., Sr. (Father), appeals from the decree of the Court of Common Pleas of Lehigh County, entered on June 13, 2014, that terminated his parental rights to his son, E.A.F., Jr., born in July of 2011, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), and 23 Pa.C.S. § 2511(b). We affirm.

The record supports this recitation of the facts of this case. Lehigh County Office of Children and Youth Services (LCOCYS) first became aware of this family on September 12, 2011, when it received a referral alleging domestic violence between Mother and Father. LCOCYS received a second referral on September 29, 2011, when Child was approximately two months old, that Child had been hospitalized with dehydration and constipation. He was diagnosed with "Hirschprung's Disease" and underwent surgery to correct the condition. Another incident of domestic violence occurred on

---

* Retired Senior Judge assigned to Superior Court.

November 9, 2011, when Father struck Mother in the face while she was holding Child. Father was charged with simple assault.

Child was hospitalized again on December 5, 2011, with bacterial infections that required strict adherence to a particular treatment regimen. Mother voluntarily placed Child in the custody of LCOCYS when she was unable to care for Child's medical needs. The trial court adjudicated Child dependent on February 9, 2012, and placed him in the legal and physical custody of LCOCYS. Neither parent was present for the Adjudication.

The adjudication order required the parents to submit to drug testing once a week for three months; schedule and undergo a drug and alcohol evaluation and follow through with all the recommendations of that evaluation; attend all of Child's medical appointments; attend all meetings at SafeStart regarding Child; attend visits with the Child two times per week for two hours each; engage in parenting classes; continue to attend Lehigh Valley Community Mental Health for mental health treatment and sign a release of information to provide their treatment records to LCOCYS; obtain legal employment and stable housing; and follow through with recommendations made by the LCOCYS.

The trial court held the first permanency review hearing in this matter on May 3, 2012. Father attended but Mother, who was aware of the hearing, did not. The trial court found that there had been minimal compliance with its order by Father, no compliance by Mother, and that

neither parent had made any progress toward alleviating the circumstances that necessitated Child's placement. Of twenty-four visits scheduled with Child, Father attended two and Mother attended one. Neither parent had submitted to drug testing.

The trial court held a second permanency review on August 9, 2012. Neither parent attended that hearing. The trial court found that neither parent had made any progress toward alleviating the circumstances that led to Child's placement, nor had either parent complied with the permanency plan or visited with Child. The whereabouts of the parents were unknown and neither had any contact with LCOCYS. The trial court ordered services for the parents to remain as previously ordered.

In August 2012, LCOCYS assigned caseworker Heather Hudson to Child's case. At trial, Ms. Hudson testified about her attempts to engage the parents in services and the parents' failure to participate successfully in any court-ordered services. N.T. 11/28/13, at 7-9.

LCOCYS filed a motion for aggravated circumstances on January 30, 2013, alleging the parents' failure to maintain substantial and continuing contact with Child for a period of more than six months. The trial court heard the motion for aggravated circumstances at a permanency review hearing held on February 14, 2013, and found that aggravated circumstances existed. Father appeared at this hearing, but Mother did not. The trial court again found neither compliance with, nor progress by, either

parent in the court-ordered reunification services or in rectifying the circumstances that led to Child's placement.

On April 11, 2013, the trial court held a hearing on LCOCYS' request to modify Child's placement by placing him in kinship care with his Paternal Grandmother, T.P. The trial court denied the request on the ground of the bond that Child had developed with his foster parents and foster sibling after sixteen months of placement in their home.

At a permanency review hearing on September 23, 2013, the trial court found that neither parent had complied with the permanency plan, and that neither had made any progress toward reunification. By this time, Child had been in the custody of LCOCYS and had been placed with the same foster family for twenty-one months.

LCOCYS filed its petitions for the involuntary termination of the parental rights of Mother and Father on May 7, 2013. The trial court held a hearing on those petitions on October 28, 2013. Testifying at that hearing were caseworker, Heather Hudson; casework supervisor, Rhoda Stoudt; SafeStart childhood development manager, Dana Henry; Child's court-appointed special advocate, Beverly Walton; Mother; and Father. On June 13, 2014, the trial court entered its Decree terminating the parental rights of Mother and Father pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), and 23 Pa.C.S. § 2511(b). Father filed a timely notice of appeal on July 8, 2014, and a notice of appeal amended to include his statement of errors

complained of on appeal on July 9, 2014. Mother did not file an appeal and

she is not a party to this appeal.

Father raises the following questions on appeal:

1. Did the lower court err when it found that [LCOCYS] had proven by clear and convincing evidence that the paternal rights of [Father] should be terminated?

2. Did the lower court err when it found that termination of the parental rights of [Father] served the best interests of [Child], when the circumstances that necessitated the original placement of [Child] into the custody of [LCOCYS] no longer existed and [Father] had an appropriate family member willing and able to take custody of [Child]?

Father's Brief, at 5.

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and

- 5 -

deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a), in addition to subsection (b).  **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to do so by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear

conviction, without hesitance, of the truth of the precise facts in issue." ***In re T.F.***, 847 A.2d 738, 742 (Pa. Super. 2004). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In the Interest of K.Z.S.***, 946 A.2d 753, 759 (Pa. Super. 2008) (internal citations omitted).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrated a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties. ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003).

> With respect to subsection 2511(a)(1), our Supreme Court has held:
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

***In re Adoption of Charles E.D.M.***, 550 Pa.595, 602, 708 A.2d 88, 92 (1988). Further,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 533 Pa. 115, 620 A.2d 481 (1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

Before we address the merits of Father's appeal, we must address certain shortcomings in his brief. In the argument section of his brief, Father argues the claims that he makes in his questions presented, i.e., that LCOCYS failed to present sufficient evidence to demonstrate that his parental rights should have been terminated, that the termination of his rights was not in Child's best interests, and that a family member is available to care for Child. Father also argues, however, that LCOCYS came to the litigation with unclean hands, and that the trial court terminated his

- 9 -

rights pursuant to the wrong subsections of the statute. We will not consider the question of kinship care for Child or the question of LCOCYS' unclean hands on the ground that Father has waived these issues by failing to raise them in his statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii); *Yates v. Yates*, 963 A.2d 535, 542 (Pa. Super. 2008). We must also reject Father's "unclean hands" claim on the ground that he failed to support it with any reference to our law, and has thusly failed to develop an adequate argument. "The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (internal citation omitted). "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (internal citations omitted). *See Chapman-Rolle v. Rolle*, 893 A.2d 770, 774 (Pa. Super. 2006) (stating, "[i]t is well settled that a failure to argue and to cite any authority supporting an argument constitutes a waiver of issues on appeal") (*quoting Jones v. Jones*, 878 A.2d 86, 90 (Pa. Super. 2005)).

Finally, we decline to consider Father's complaint that the trial court erred when it terminated his parental rights pursuant to subsections 23 Pa.C.S.A. 2511(a) (2), (5) and (a)(8). He asserts subsections 2511(a)(5)

and (8) do not apply to the facts of this case and asserts the court erred in applying subsection 2511(a)(2) because father's mother was willing and able to care for Child. Appellant's Brief, at 14-17. The trial court decision thoroughly addresses subsections 2511(a)(2), (5), and (8), in addition to subsection 2511(a)(1). We, however, need only agree with the trial court's analysis pursuant to one subsection, and we have chosen to analyze its determination pursuant to subsection (a)(1). **See Z.S.W.**, **supra**.

Our review of the record reveals that the trial court's decision to terminate Father's parental rights under 23 Pa.C.S.A. §§2511(a)(1) and (b), and to permit Child's adoption without notice to or consent from Father, is supported by clear and convincing evidence, and that there was no abuse of the trial court's discretion.

We have carefully read the trial court opinion in this matter and are fully satisfied that it ably addresses the issues Father has raised on appeal. Therefore, rather than conduct our own analysis of those issues, we will affirm the trial court's decree on the basis of the concise, thoughtful, and well-written opinion of the Honorable Carol H. McGinley.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/15/2015

Circulated 01/06/2015 11:15 AM

CLERK OF ORPHANS
COURT DIVISION
LEHIGH COUNTY

2014 JUN 13 P 3 45

COURTHOUSE
ALLENTOWN, PA.

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

In re: Involuntary Termination of Parental Rights to :
E.A.F., Jr.,                                              :       No.: A2013-0054
                              A Minor                     :


************************************************************

APPEARANCES:

        Glenn R. Smith, Esquire
            On behalf of Lehigh County Office of Children &
            Youth Services

        Rebeca Torres, Esquire
            On behalf of the Minor

        Brian R. Joyce, Esquire
            On behalf of        /es, Mother of the Minor

        Gavin P. Holihan, Esquire
            On behalf of        r., Father of the Minor


************************************************************


## ADJUDICATION


A-2

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

## CAROL K. McGINLEY, P.J.

FINDINGS OF FACT

1.  E.A.F., Jr. was born on July 26, 2011.

2.  ₃ (Mother) is E.A.F., Jr.'s biological mother.

3.  ·. is E.A.F, Jr.'s biological father.

4.  Lehigh County Office of Children and Youth Services (LCOCYS) received a referral for this family on September 12, 2011, due to allegations of domestic violence between Mother and Father. Notes of Testimony October 28, 2013, p. 34.

5.  A second referral was received on September 29, 2011, as a result of the child experiencing dehydration and constipation which required hospitalization. E.A.F., Jr. was subsequently diagnosed with Hirschsprung's disease; surgery was required to address his symptoms. N.T. October 28, 2013, p. 78; Order dated February 9, 2012.

6.  On November 9, 2011, Father struck Mother in the face while she was holding E.A.F., Jr. Father was charged with simple assault. Order dated February 9, 2012.

7.  On December 5, 2011, E.A.F., Jr. was hospitalized with bacterial infections which were diagnosed as Clostridium difficile and enterocolitis. N.T. October 28, 2013, p. 78; Order dated February 9, 2012.

8.  In order to address the Child's medical conditions, a strict regimen and procedure

2

A-4

for administering the necessary medications was required. The Child required both oral and rectal antibiotics for treatment of the bacterial infection. N.T. October 28, 2013, pp. 35-36; Order dated February 9, 2012.

9. Post-discharge care required the parents to get training on how to administer the medication; both parents failed to complete the post-discharge care training. N.T. October 28, 2013, pp. 11, 36-38, 45, 76.

10. On December 12, 2011, Mother signed a voluntary placement because of E.A.F., Jr.'s extreme medical needs and because she was overwhelmed. At that time, Father had a warrant out for his arrest and his whereabouts were unknown. N.T. October 28, 2013, pp. 10-11, 39, 76; Order dated February 9, 2012.

11. E.A.F., Jr. was adjudicated dependent on February 9, 2012 and placed in the legal and physical custody of LCOCYS. Neither parent was present for the adjudication. Order dated February 9, 2012.

12. Pursuant to the Adjudication Order, the parents were ordered to: 1. Submit to drug testing at SASSI once a week for three months; 2. Schedule and undergo a drug and alcohol evaluation at Lehigh Valley Drug and Alcohol Unit and follow through with all recommendations of that evaluation; 3. Attend all medical appointments for the Child; 4. Attend all meetings at SafeStart regarding the Child; 5. Attend visits with the Child two times per week for two hours; 6. Engage in parenting classes; 7. Continue to attend LVMHC for mental health treatment and sign a release of information to provide those records to LCOCYS;

3

A-5

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

8. Obtain legal employment; 9. Obtain stable housing; 10. Follow through with recommendations made by the Agency. N.T. p. 7; Order dated February 9, 2012.

13. The first permanency review hearing was held on May 3, 2012. Father attended; Mother failed to attend despite receiving notice. Order dated May 3, 2012.

14. As of May 3, 2012, Father had minimal compliance with the court-ordered services; Mother had no compliance. Neither parent made any progress toward alleviating the circumstances which necessitated the original placement. Order dated May 3, 2012.

15. During the period of time between February 9, 2012 and May 3, 2012, 24 visits with the Child were possible. Father attended two visits; Mother attended only one visit. Order dated May 3, 2012.

16. During the same period of time, neither parent submitted to SASSI testing. Order dated May 3, 2012.

17. The second permanency review hearing was held on August 9, 2012; neither parent attended the hearing. Order dated May 3, 2012.

18. As of August 9, 2012, neither parent made any progress toward alleviating the circumstances that led to the placement of the Child, nor had either parent complied with the permanency plan for the Child. N.T. October 28, 2013, pp. 7-8; Order dated August 9, 2012.

19. During this review period, neither parent had participated in any services, including visits with the Child. The whereabouts of the parents were not known

4

A-6

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

at this time and contact with the Agency was minimal. Order dated August 9, 2012.

20. The original court-ordered services continued to remain the same for both parents. N.T. p. 7; Order dated August 9, 2012.

21. By Order dated February 19, 2013, after hearing held February 14, 2013, aggravated circumstances were found to exist in this case as a result of the parents' failure to maintain substantial and continuing contact with E.A.F., Jr. for a period of more than six months. N.T. October 28, 2013, pp. 30, 45, 56-57; Order dated February 19, 2013.

22. The third permanency review hearing was held on February 14, 2013. Father was present; Mother failed to attend. Order dated February 21, 2013.

23. As of February 14, 2013, neither parent had any compliance or progress in participating in the court-ordered services or in rectifying the circumstances that led to the Child's placement with the Agency. Order dated February 21, 2013.

24. Per Order dated April 29, 2013, after hearing held on April 11, 2013, the Court denied the Agency's request to move the Child's placement to the kinship home of the paternal grandmother, Theresa Phillips. N.T. pp. 32-33.

25. From the February 9, 2012 Adjudication to July 19, 2013,[1] Father failed to attend all four scheduled medical appointments for the Child; his last visit with the Child was on June 6, 2012; he did not complete parenting classes; he did not attend

---

[1] Caseworker Heather Hudson was responsible for the case during the period of time from August 27, 2012 through July 19, 2013, and testified to that period of time only.

5

A-7

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

mental health treatment; he did not follow through with obtaining a second drug and alcohol evaluation after his unsuccessful discharge from CADA; he submitted to only one urine screen and it was positive for marijuana and ethyl glucuronide; he did not obtain employment; and he missed six out of eight scheduled appointments with the caseworker. N.T. October 28, 2013, pp. 7-9, 11, 101, 102, 104.

26.    From the February 9, 2012 Adjudication to July 19, 2013[2], Mother attended one out of four scheduled medical appointments for the Child; her last visit with the Child was on June 6, 2012; she did not complete a parenting class; she did not attend mental health treatment since July of 2012; she did not follow through with any drug and alcohol treatment; she did not submit any urine screens; and she did not obtain employment. N.T. October 28, 2013, p. 9.

27.    A permanency review hearing was held on September 23, 2013. N.T. October 28, 2013, p. 31.

28.    As of that date, neither parent made any progress towards the court-ordered requirements for reunification. N.T. October 28, 2013, p. 31.

29.    Mother had no contact with the Child from July 19, 2013 through the termination hearing. The last visit Mother had with the Child was June 6, 2012. N.T. October 28, 2013, p.52.

30.    Neither parent has provided any type of support, including financial, to the Child

---

[2] Caseworker Heather Hudson was responsible for the case during the period of time from August 27, 2012 through July 19, 2013, and testified to that period of time only.

6

A-8

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

since February 9, 2012. N.T. October 28, 2013, p. 56.

31. Mother has cervical cancer and possibly breast cancer; she is not treating due to lack of medical insurance. She also suffers from depression and anxiety. N.T. October 28, 2013, pp. 74, 77, 81.

32. Both parents reside with Father's uncle; Father advised the caseworker that the home was not appropriate for the Child. N.T. October 28, 2013, p. 9.

33. On April 2, 2013, Father went to the Child's doctor's appointment. The Child did not approach Father and did not want to engage with Father. Father tried to talk to the Child, but the child just clung to the foster mom. N.T. October 28, 2013, pp. 85-86, 95.

34. As of the date of the termination hearing, E.A.F., Jr. had been in the care of the Agency and placed with the same foster family for a period of 21 months. The Child is doing very well in the foster home and has formed a bond with his foster family. N.T. October 28, 2013, pp. 10, 53; Order of Court dated October 14, 2013.

35. The foster family consists of a mother, father, two biological children and another foster child. N.T. October 28, 2013, p. 53.

36. The extensive care needed in December 2011 for the treatment of Hirschsprung's Disease is no longer necessary. N.T. October 28, 2013, p. 40.

37. In January 2013, the Child was diagnosed with food allergies. His allergies are controlled by dietary restrictions. N.T. October 28, 2013, pp. 10, 32, 41.

7

A-9

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

38. Paternal grandmother shares a positive bond with the Child. Paternal grandmother has consistently visited the Child at the SafeStart program as often as three times a week for three hours at a time. The Child would suffer harm if that bond was terminated. N.T. October 28, 2013, pp. 41-44.

39. Paternal grandmother has been diagnosed with mild retardation; she receives SSI and various services in her home. N.T. October 28, 2013, pp. 46-47.

40. The foster family indicates a willingness to maintain contact with the Child's paternal grandmother. N.T. October 28, 2013, p. 54.

41. E.A.F., Jr. began the SafeStart program in February of 2012, and has continued in that program through the date of the termination hearing. The Child attends six hours a day, five days a week. N.T. October 28, 2013, pp. 66, 69.

42. SafeStart assesses E.A.F., Jr.'s progress. His 24-month development assessment indicated he was "on age" in gross motor, fine motor, cognitive, language development, social/emotional development; and he is emerging in his self-help skills. N.T. October 28, 2013, p. 67.

43. Mother and Father were permitted to visit E.A.F., Jr. at SafeStart every day. N.T. October 28, 2013, p. 65-66, 69.

44. Father visited the Child twice at SafeStart in May of 2012. Father participated in a SafeStart home visit and visited the Child one time in June of 2012. N.T. October 28, 2013, p. 68.

45. Mother visited the Child one time at SafeStart in May of 2012. Mother

8

A-10

participated in a SafeStart home visit and visited the Child one time in June of 2012. N.T. October 28, 2013, p. 68.

46. Mother stated that she did not visit with the Child at SafeStart because she "was going through a lot" and because of depression. N.T. October 28, 2013, p. 83.

47. Mother is not currently receiving treatment for mental health or on any medications because she does not have insurance. N.T. October 28, 2013, p. 81.

48. Father last had contact with the Child at an allergist appointment on April 2, 2013. Father believed that was the only time he ever saw his son; he had no recollection of any visits prior to that date. N.T. October 28, 2013, pp. 85-86, 103.

49. Father was unable to list all of the food that the Child is allergic to. N.T. October 28, 2013, p. 97.

50. Father has not visited the Child because he is "trying to get [himself] together." He plans on going to the Job Corps to obtain his high school diploma and obtain a business degree. N.T. October 28, 2013, pp. 95-96.

51. Father knew what he was ordered to complete in order to get his son back. He did not do those things because "[s]ometimes I just didn't think that I should have to go." Father thought there were too many things to accomplish simultaneously. N.T. October 28, 2013, p. 102.

52. Caseworker Richard Romig received this case on July 30, 2013. He placed phone calls and left messages for both Mother and Father on August 14, 2013 and August 27, 2013. N.T. December 10, 2013, pp. 6-7.

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

53. Mr. Romig reviewed voicemail messages from Mother and Father on September 23, 2013. It is not known when the voicemails were left for Mr. Romig as he was on vacation the week prior to retrieving the messages. Mr. Romig returned the phone calls on September 24, 2013 and scheduled a meeting with the parents for September 25, 2013 at the LCOCYS. Neither Mother nor Father attended the meeting. N.T. December 10, 2013, pp. 7-9, 33.

54. Mr. Romig and a paralegal from LCOCYS went to Mother and Father's residence on September 25, 2013. Mr. Romig improperly advised the parents that the situation "did not look too well for them" and improperly offered them the opportunity to sign voluntary relinquishments without contacting either Mother or Father's appointed legal counsel. N.T. December 10, 2013, pp. 11-13.

55. Mother and Father both signed voluntary consents to termination on September 25, 2013. On September 27, 2013, Father left a voicemail for Mr. Romig stating that Father and Mother both wished to revoke the voluntary relinquishments to parental rights. Official revocation subsequently occurred in early October 2013. N.T. December 10, 2013, p. 14.

56. Father went to LCOCYS on November 14, 2013 to request a bus pass in order to visit the Child at SafeStart. N.T. December 10, 2013, p. 15.

## CONCLUSIONS OF LAW

10

A-12

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

1.    Petitioner established by clear and convincing evidence that Mother has evidenced a settled purpose to relinquish her parental claim to E.A.F., Jr. and that Mother and Father have refused and failed to perform parental duties for a period greater than six months prior to the filing of the petition for termination.

2.    Petitioner established by clear and convincing evidence that Mother and Father showed a repeated and continual refusal to provide E.A.F., Jr. with the proper parental care and control or subsistence necessary for his physical and mental well-being and that neither parent can or will remedy this situation in a reasonable period of time.

3.    Petitioner established by clear and convincing evidence that E.A.F., Jr. has been removed from the physical and legal custody of Mother and Father for a period in excess of six months and the conditions that led to the child remaining in custody continue to exist. Furthermore, neither Mother nor Father will be able to remedy these conditions within a reasonable period of time even with the services available to Mother and Father.

4.    Petitioner established by clear and convincing evidence that E.A.F., Jr. has been removed from the physical and legal custody of Mother and Father for a period in excess of twelve months and the conditions that led to the child remaining in custody continue to exist. Furthermore, termination of Mother and Father's parental rights to E.A.F., Jr. best meets the needs and welfare of the child and best provides for his developmental, physical and emotional needs.

11

A-13

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

5.      Petitioner established by clear and convincing evidence that no bond or attachment exists between either Mother or Father and E.A.F., Jr.

6.      Petitioner established by clear and convincing evidence that the termination of Mother and Father's parental rights to E.A.F., Jr. best meets the needs and welfare of the Child and best provides for his developmental, physical and emotional needs.

7.      Petitioner established by clear and convincing evidence that the termination of the parental rights of Mother and Father is appropriate in this case.

DISCUSSION

On May 7, 2013, LCOCYS filed petitions to terminate the parental rights of Mother and Father to E.A.F., Jr. The grounds for involuntary termination are set forth in 23 Pa. C.S.A. § 2511. Petitioner only needs to establish one ground for termination. LCOCYS petitioned to terminate Mother and Father's parental rights on the grounds of 23 Pa. C.S.A. § 2511(a)(1), (2), (5) and (8) and § 2511(b).

The statute provides, in pertinent part, as follows:

**§ 2511. Grounds for involuntary termination**

(a) General rule.- The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

12

A-14

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

    (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
    ...

    (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

    ...

    (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

  (b) Other considerations. -- The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child... With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein, which are first initiated subsequent to the giving of notice of the filing of petition.

23 Pa.C.S.A. § 2511.

The issue before us is whether LCOCYS satisfied its burden of showing that termination of parental rights is appropriate based on Pennsylvania law. The Court's inquiry in a termination of parental rights case is two-fold. *In re R.J.S.*, 901 A.2d 502, 508 (Pa. Super. 2006). First, the Court looks at the parent's conduct. *Id.* The petitioner has the burden of showing by clear and

13

A.15

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

convincing evidence that a statutory reason for termination exists. *Santosky v. Kramer*, 455 U.S. 745 (1982). Second, once the court has determined a statutory ground for termination has been established, the court focuses on the child's needs and welfare. *In re Adoption of R.J.S., supra.*

All children are entitled to certain irreducible minimum requirements from their parents, including adequate housing, clothing, food, love, and supervision. *In Re: J.W.*, 578 A.2d 952 (Pa. Super. 1990). In addition, a parent must exhibit reasonable firmness in attempting to overcome any barriers or obstructive behavior of others and affirmatively demonstrate love, protection and concern for the child. *In Re: C.M.S.*, 832 A.2d 464 (Pa. Super. 2003).

The Court must examine the circumstances of the case and also consider all explanations offered to determine if the evidence, in light of the totality of the circumstances, clearly warrants involuntary termination. *Matter of Adoption of Charles E.D.M., II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (Pa. 1998). The petitioner has the burden of producing evidence that is so clear, direct, weighty and convincing so as to enable the court to come to a clear conviction, without hesitation of the truth of the precise facts at issue. *In re: Child M*, 681 A.2d 793 (Pa. Super. 1996).

MOTHER

When E.A.F., Jr. was two months old, he experienced a serious medical condition requiring surgery and several hospitalizations. The Child was discharged to the care of his parents after the first few hospitalizations. The medical complications continued to increase and the parental responsibility grew to include training to administer medication to the child. Neither parent completed the training. Mother was overwhelmed by the responsibility of caring for the

14

A-16

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

Child, which included the care required in tending to his medical needs; and, on December 12, 2011, Mother voluntarily placed E.A.F., Jr. with LCOCYS. Father's whereabouts at that time were unknown.

On February 9, 2012, at approximately six months old, E.A.F., Jr. was adjudicated dependent. Since the adjudication, Mother has been ordered to: submit to drug testing once a week for three months; schedule and undergo a drug and alcohol evaluation and follow through with those recommendations; attend all medical appointments for the Child; attend meetings at SafeStart regarding the Child; attend visits with the Child two times a week for two hours; engage in parenting classes; attend mental health treatment; obtain legal employment; obtain stable housing; and follow through with recommendations of LCOCYS.

Mother has had the same court-ordered requirements since February 9, 2012. Her compliance has been almost non-existent. Since the adjudication of dependency, Mother visited the Child one time on January 24, 2012, and attempted a visit at the hospital on June 6, 2012, but left after a few moments and did not return. An Aggravated Circumstances Order was entered on February 19, 2013. The Order found that the identity and whereabouts of the parents are known and both Mother and Father failed to maintain substantial and continual contact with the Child for a period of six months. Mother did not visit the Child since the Aggravated Circumstances Order.

Mother did not submit to urinalysis to demonstrate sobriety; did not attend any drug or alcohol treatment; Mother did not complete a parenting class; she did not attend mental health treatment since July of 2012; and she did not obtain legal employment. She is currently living

15

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

with Father at Father's uncle's residence.

Mother's conduct for the entire duration of E.A.F., Jr.'s dependency, has clearly evidenced a settled purpose of relinquishing her parental claim to the Child. She has failed to perform any parental duties including maintaining contact via visitation. She has not provided for the Child in any manner: no emotional, social, educational or financial support exists in the record of this case. Mother's utter lack of involvement has caused the Child to be without essential parental care, control or subsistence for his physical and mental well-being and Mother has not demonstrated that she will remedy her refusal to parent in the future. Accordingly, we find Petitioner has established by clear and convincing evidence that the grounds for involuntary termination set forth in 23 Pa.C.S.A. § 2511(a)(1) and (2) have been met as to Mother.

In addition, the Child has been removed from Mother for more than two years. The "condition" that led to the Child's placement was Mother's mental state and inability to meet the Child's medical needs. Mother was "overwhelmed" by the requirements of motherhood.

The extreme medical care that was required when Mother placed the Child into care has since ceased, but there is nothing to suggest that removing the initial medical conditions resolved the problems that caused Mother to be overwhelmed. The general stress of raising a toddler remains along with the additional stress of rearing a child with special dietary restrictions due to allergies. Further, Mother is now faced with her own serious medical conditions.

Mother has failed to attend mental health services which would have assessed her stress and anxiety and which would have provided her with coping skills to remedy the condition that caused E.A.F., Jr's placement. There is nothing left to offer Mother that would remedy the

16

A-18

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

condition within a reasonable period of time. In addition, as discussed more fully below,
termination of parental rights would best serve the needs and welfare of the Child. Accordingly,
we find Petitioner has established by clear and convincing evidence that the grounds for
involuntary termination set forth in 23 Pa.C.S.A. § 2511(a)(5) and (8) have been met as to
Mother.

Finding that LCOCYS has established statutory grounds for terminating Mother's
parental rights, we turn now to our primary consideration: the needs and welfare of the child. 23
Pa.C.S.A. § 2511(b). In addressing the needs and welfare of the child, it is necessary to consider
the emotional bond between the parent and the child. *In Re: E.M.*, 620 A.2d 481 (Pa. 1993). "A
court, in considering what situation would best serve the child's needs and welfare, must
examine the status of the natural parental bond to consider whether terminating the natural
parents' rights would destroy something in existence that is necessary and beneficial." *In Re:*
*P.A.B.*, 570 A.2d 522 (Pa. Super. 1990). Further, parents cannot solely rely on their natural ties
to their child. *In Re: Stickler*, 356 Pa. Super. 56, 60, 514 A.2d 140, 142 (1986).

Mother voluntary placed the Child when he was less than five months old. Today E.A.F.,
Jr. is nearly three years old. From the time of placement until the time of the first termination
hearing date, a period of twenty-two months, Mother visited with Child twice. At the time of the
termination hearing, Mother had not seen the Child for sixteen months. She has not provided for
the Child in any fashion; all of E.A.F., Jr.'s needs are met by his foster family and his paternal
grandmother. Any bond that may have existed when E.A.F., Jr. was a baby has been severed due
to the lack of contact between Mother and the Child. The only remaining tie that exists between

17

A-19

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

them is a biological one. Therefore, terminating E.A.F. Jr.'s relationship with Mother will not destroy something in existence that is necessary and beneficial to him; it will simply maintain the status quo. It is in E.A.F. Jr.'s best interest to have the opportunity to be raised in a stable, loving and permanent home. The needs and welfare of E.A.F. Jr. dictate termination of Mother's parental rights in accordance with 23 Pa.C.S.A. § 2511(b).

FATHER

On November 9, 2011, Father struck Mother in the face while she was holding the Child; he was charged with simple assault. At the time the Child was placed with LCOCYS, Father's whereabouts were unknown and there was a warrant out for his arrest. Father had the same court-ordered requirements as Mother pursuant to the Adjudication Order of February 9, 2012: submit to drug testing once a week for three months; schedule and undergo a drug and alcohol evaluation and follow through with those recommendations; attend all medical appointments for the Child; attend meetings at Safe Start regarding the Child; attend visits with the Child two times a week for two hours; engage in parenting classes; attend mental health treatment; obtain legal employment; obtain stable housing; follow through with recommendations of LCOCYS.

From February 9, 2012 until the time of the termination hearing held on October 28, 2013, Father submitted one urine screen and it was positive for marijuana and ethyl glucoronide. He did not obtain the required drug and alcohol evaluation nor comply with recommendations. Father did not attend most of the Child's doctor's appointments. He did attend an allergist appointment on April 2, 2013, although Father was unable to state a comprehensive list of what the Child is allergic to at the termination hearing. Father did not attend SafeStart; did not engage

18

A-20

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

in parenting classes; did not attend mental health treatment; and did not obtain legal employment. Father has maintained housing with his uncle.

Regarding visits, Father last saw the Child at the April 2, 2013 allergist appointment; Father could not remember any prior visits. He did have two prior visits during the period between February 9, 2012 and May 3, 2012, and he subsequently visited the Child on June 6, 2012, while the Child was in the hospital. This amounts to four total visits in twenty months.

Such minimal contact with the Child and such a lack of progress over such a lengthy period of time clearly evidences Father's refusal and failure to perform parental duties. Other than consistently living with his uncle, a home not appropriate for the Child, Father has made no progress in accomplishing any of the court-ordered requirements for reunification. Father testified that he knew of the tasks that he was required to complete in order to get his son back. His reasons for not completing those tasks were that: "[s]ometimes I just didn't think that I should have to go" and that there were too many things to accomplish simultaneously. N.T. October 29, 2013, p. 102. Father's refusal to accept any parental responsibility has caused the Child to be without essential parental care, control or subsistence necessary for E.A.F., Jr.'s physical and mental well-being. He has not supported his son in any manner and all the Child's needs are being met by the foster family and by the paternal grandmother. Accordingly, we find Petitioner has established by clear and convincing evidence that the grounds for involuntary termination set forth in 23 Pa.C.S.A. § 2511(a)(1) and (2) have been met as to Father.

At the time of the first termination hearing, E.A.F., Jr. had been removed from Father's care for a period of twenty months. At the time the Child was placed into LCOCYS's care,

19

A-21

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

Father's whereabouts were unknown and he had an outstanding warrant for assaulting Mother. Since February 9, 2012, Father was court-ordered to complete specific tasks to establish sobriety, stability and a relationship with the Child. There is no evidence to suggest that Father will now remedy the problems that he has for so long ignored or that any available services would remedy the problems within a reasonable period of time. In addition, as more fully discussed below, termination of Father's parental rights would best serve the needs and welfare of the Child. Accordingly, we find Petitioner has established by clear and convincing evidence that the grounds for involuntary termination set forth in 23 Pa.C.S.A. § 2511(a)(5) and (8) have been met as to Father.

As previously discussed regarding Mother, finding that LCOCYS has established statutory grounds for terminating Father's parental rights, we turn now to our primary consideration: the needs and welfare of the child. 23 Pa.C.S.A. § 2511(b). In addressing the needs and welfare of the child, it is necessary to consider the emotional bond between the parent and the child. *In Re: E.M.*, 620 A.2d 481 (Pa. 1993). "A court, in considering what situation would best serve the child's needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial." *In Re: P.A.B.*, 570 A.2d 522 (Pa. Super. 1990). Further, parents cannot solely rely on their natural ties to their child. *In Re: Stickler*, 356 Pa. Super. 56, 60, 514 A.2d 140, 142 (1986).

Father attended the Child's allergist appointment on April 2, 2013. At the appointment, the Child did not approach Father and did not want to engage with Father. Father tried to talk

20

A-22

*In re: Involuntary Termination of Parental Rights to E.A.F., Jr.*
*Case No.: A2013-0054*

with the Child, but the Child just clung to the foster mother. Prior to the April 2, 2013 visit,

Father's last contact with the Child was ten months earlier on June 6, 2012; Father could not

recall that visit. The Child's behavior towards Father demonstrates no bond exists between the

two. It is reasonable to infer that a twenty-seven-month-old child would not have a relationship,

bond or, very possibly, a memory of a person who he has only seen four times in twenty months.

The Child's behavior towards Father confirms such lack of relationship. Terminating the rights

of Father would not destroy anything in existence that is necessary and beneficial to E.A.F., Jr.

It would best serve the needs and welfare of the Child to terminate Father's rights and to be

given the opportunity to be raised in a stable, loving and permanent home where he is permitted

to continue the nurturing relationships with the people to whom he is firmly bonded, namely his

foster family and paternal grandmother. The needs and welfare of E.A.F., Jr. dictate termination

of Father's parental rights in accordance with 23 Pa.C.S.A. § 2511(b).

BY THE COURT:

DATE: June 13·2014

CAROL K. McGINLEY, P.J.

21

A-23